# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-01077-COA

JOHN TALLANT A/K/A JOHN HARLEY            APPELLANT
TALLANT A/K/A JOHN H. TALLANT

v.

STATE OF MISSISSIPPI            APPELLEE

DATE OF JUDGMENT:      09/03/2020
TRIAL JUDGE:      HON. KELLY LEE MIMS
COURT FROM WHICH APPEALED:      LEE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      JOHN TALLANT (PRO SE)
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
     BY: ALLISON ELIZABETH HORNE
NATURE OF THE CASE:      CIVIL - POST-CONVICTION RELIEF
DISPOSITION:      AFFIRMED - 12/14/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., WESTBROOKS AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. A Lee County grand jury indicted John Tallant on three counts (Counts I-III) of sending or transmitting child pornography in violation of Mississippi Code Annotated section 97-5-33 (Rev. 2014), two counts (Counts IV-V) of sexual battery of a child under fourteen years of age in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014), and two counts (Counts VI-VII) of fondling a child under sixteen years of age in violation of Mississippi Code Annotated section 97-5-23 (Supp. 2015). On August 18, 2017, Tallant pled guilty to Counts I-III[1] and was sentenced to forty years (with fifteen years and one

---

[1] As a part of Tallant's plea deal, the State retired Counts IV-VII.

month suspended and twenty-four years and eleven months to serve day-for-day) in the custody of the Mississippi Department of Corrections (MDOC) and five years of post-release supervision (PRS) upon his release from prison.[2]  On September 17, 2018, Tallant filed a pleading entitled "Motion Seeking Post-Conviction Collateral Relief [(PCR)]" after the time for a direct appeal had expired.  In that pleading, he requested to see sealed records at the district attorney's (D.A.) office.  The circuit court denied the motion on November 30, 2018.  Tallant filed another motion pro se, which was entitled "Motion for Post-Conviction Relief," on August 24, 2020, although he signed it on August 17, 2020.  In this pleading, Tallant alleged that he was deprived of his Fifth Amendment right against double jeopardy due to an alleged multiplicitous indictment and that his trial counsel was ineffective.  The circuit court denied Tallant's second motion, finding no merit to his arguments and that it was a successive PCR motion.  Tallant appeals the denial of the second motion.  Because Tallant's first post-conviction pleading was not a properly filed PCR motion, we find that his second pleading is not successive.  However, we affirm the circuit court's denial of Tallant's August 2020 PCR motion.

### Statement of the Facts and Procedural History

¶2.　　On January 25, 2017, Corporal Donna Franks of the Lee County Sheriff's Department signed an affidavit stating that Tallant had committed sexual battery against a minor child.  That same day, the Lee County Justice Court issued a warrant for Tallant's arrest.  He was

---

[2] Although he was sentenced on each count, the court suspended his sentences for Counts II and III.

arrested on February 28, 2017, in Tupelo, Mississippi, and transported to the Lee County jail. Investigator Len Schaefer of the Lee County Sheriff's Department read Tallant his *Miranda* rights and further provided him with a written statement of those rights and a waiver that Tallant could sign. Initially, Tallant refused to speak to Schaefer without counsel present. Later, Tallant waived his *Miranda* rights and made a voluntary confession. In his confession, Tallant stated that he sent his wife ten to twenty images in multiple texts of children engaging in sexual acts and that he knew this was child pornography. Tallant further admitted to engaging in inappropriate sexual acts with his daughter. Tallant posted a bond in the sum of $350,000 and was released from jail.

¶3. A Lee County grand jury indicted Tallant on June 16, 2017, on three counts (Counts I-III) of sending or transmitting child pornography in violation of Mississippi Code Annotated section 97-5-33, two counts (Counts IV-V) of sexual battery of a child under fourteen years of age in violation of Mississippi Code Annotated section 97-3-95(1)(d), and two counts (Counts VI-VII) of fondling a child under sixteen years old in violation of Mississippi Code Annotated section 97-5-23.

¶4. Tallant was arraigned on July 5, 2017. On the day of the arraignment, the State filed a motion to continue to hold Tallant without bond pending trial. At the arraignment, the circuit court revoked Tallant's bond, appointed him an attorney, and set the hearing on the State's motion for July 6, 2017. At that hearing, Franks and Schaefer testified about the investigation. Franks presented several text-message logs from Tallant, which included both

3

multiple messages and multiple pictures of child pornography:

> STATE: Investigator Franks, as part of your investigation did you or someone on behalf of the sheriff's department obtain text messages between the defendant and his wife, Lyn Tallant?
>
> FRANKS: Yes, sir.
>
> STATE: And those text message logs include contents of text messages and pictures?
>
> FRANKS: Yes, sir.

In addition, Franks presented various text messages between Tallant and his wife in which Tallant admitted to engaging in inappropriate sexual acts with his daughter. The State also presented a written voluntary statement from Tallant's wife. The court overruled the defense's spousal-privilege objection. In her statement, Tallant's wife alleged that she did not know about Tallant's interests in children until he told her that "he wanted to kidnap some kids (girls) to lay and play with and rape them." When she had their daughter, she caught Tallant inappropriately touching their child, starting when the child was age one. According to Tallant's wife, their daughter "began to complain [about] her bottom hurting," but Tallant would not allow her to take the child to the doctor's office. Although she was afraid of Tallant, she finally took their daughter to the doctor to protect her. Based on witness testimony and evidence, the court granted the State's motion to hold Tallant without bond.

¶5. Tallant filed a motion to suppress the voluntary statement that he gave to Investigator Schaefer on July 24, 2017. He alleged that Schaefer gave him his *Miranda* rights and told

4

him that he did not have to tell him anything. But, Tallant alleged, Schaefer added that he would be put in the general population at the jail with other inmates who would be told about the accusations against him. Tallant also claimed that he confessed because he was afraid of what the inmates might do to him.

¶6. On July 31, 2017, Tallant filed three other motions: a motion for special venire, a motion to change venue, and a motion to compel the State to provide access to his computer hard drive. In his motion for special venire, he requested that the circuit court include three hundred additional prospective jurors because of the numerous articles and Facebook posts about the case. The motion to change venue was based on a possibility of a tainted jury pool. Tallant's motion to compel asked that the State to provide access to Tallant's hard drive that it had seized.

¶7. On August 18, 2017, the circuit court held a hearing on Tallant's motions. Tallant's counsel informed the court that Tallant did not wish to proceed on the motion for special venire or the motion to change venue at that time. Concerning the suppression of his voluntary statement, Tallant testified that he had refused to waive his right to counsel, but Schaefer continued to interrogate him without giving him an opportunity to consult with an attorney. The State responded to Tallant's motion by showing to the court that in his voluntary statement Tallant admitted he initiated the conversation with Schaefer:

> I asked to speak to Inv. Schaefer after I didn't sign my rights waiver after I got arrested. I didn't completely understand the process and he answered my questions. I agreed to speak with him and signed my *Miranda* Warning. I fully understood that I could stop talking and get an attorney.

5

In a bench ruling, the court denied Tallant's motion to suppress his voluntary statement. On the motion to compel, the circuit court ordered the State to make the evidence available for viewing by Tallant and his counsel at the D.A.'s office. However, the circuit court placed the evidence under seal and prohibited the State from transmitting or distributing copies of this material to the defense due to the sensitive nature of the evidence.

¶8.     On the same day of the hearing, Tallant decided to plead guilty to three counts of transmitting child pornography. The circuit court read aloud the three pornography counts of the indictment, each of which stated:

> [I]n said County and State between October 1, 2016 and October 31, 2016, [Tallant] did willfully, unlawfully, feloniously and knowingly send or transmit a photograph of an actual child under the age of eighteen years engaging in sexually explicit conduct as defined by Mississippi Code Section 97-5-31, in violation of Mississippi Code Section 97-5-33[.]

The State made the following sentencing recommendation:

> THE COURT:      Is there a recommendation by the State?
>
> STATE:      Yes, Your Honor. In Count I, the State recommends the defendant be sentenced to 40 years in the custody of the Mississippi Department of Corrections, fifteen years, one month suspended, leaving 24 years, 11 months to serve, and that's to be served day for day.

The court asked Tallant if he understood that he was facing 120 years in the custody of the MDOC on the child-pornography charges. He responded that he understood. The circuit court asked Tallant if he understood the State's sentencing recommendation, and he responded that he did. The court also told Tallant that the court did not have to accept the

6

State's sentencing recommendation. Tallant responded that he understood this. The circuit court questioned Tallant about his understanding of pleading guilty and waiving his constitutional rights, to which he responded that he understood.

¶9. Tallant pled guilty to the three counts of transmitting child pornography. As a part of Tallant's plea agreement, the State agreed to retire both the sexual-battery charges (Counts IV-V) and the fondling charges (Counts VI-VII). Finding that Tallant's plea was given knowingly, freely, and voluntarily, the court accepted Tallant's guilty pleas. On Count I, the circuit court specifically told Tallant that the sentence would be *served day-for-day*. The court accepted the State's recommendation and sentenced Tallant on Count I to forty years in custody, with fifteen years and one month suspended and twenty-four years and eleven months to serve day-for-day. The circuit court also sentenced Tallant to five years of post-release supervision (PRS) and ordered him to register as a sex offender upon being released from the MDOC.[3]

¶10. On September 17, 2018, after his guilty plea, Tallant filed a one-page pleading entitled "Motion for Post-Conviction Relief," in which he requested that a copy of the evidence under seal in the D.A.'s office be redacted and released to the defense "or in the alternative, [that the] judgment in this cause be set aside." This motion was signed only by Tallant's attorney. The State responded on September 18, 2018, stating that the circuit court judge ordered no

---

[3] On Counts II-III, Tallant was also sentenced to serve two forty-year terms in the custody of the MDOC. But those forty-year terms were suspended on the "same terms and conditions" as Count I.

7

transmission or distribution of the discovery and that it be placed under seal at the D.A.'s office because it contained child pornography. The State also responded that the circuit court judge ordered that discovery could be viewed by the defense at the D.A.'s office, which defense counsel had done.

¶11. Considering the pleading as a PCR motion, the circuit court denied it on November 30, 2018, for the following reasons: (1) Tallant failed to specifically assert any statutory grounds for relief under the Mississippi Uniform Post-Conviction Collateral Relief Act; (2) Tallant failed to cite to any authority in support of his motion; (3) Tallant's motion failed to comply with the format requirements found in Mississippi Code Annotated section 99-39-9 (Rev. 2015); and (4) Tallant failed to allege his pleas were given involuntarily. Therefore, the circuit court held that Tallant's motion demonstrated no basis for the relief he sought. Tallant did not appeal the denial of his motion.[4]

¶12. On August 24, 2020, Tallant filed another motion pro se entitled "Motion for Post-Conviction Relief," which he signed on August 17, 2020.[5] He asserted that the Fifth Amendment of the United States Constitution protected him against double jeopardy "as it pertain[ed] to a multiplicitous indictment and conviction" and that he received ineffective

---

[4] Tallant alleges that he did not receive a copy of the order denying his motion until after the time to appeal had expired.

[5] Tallant signed and notarized the motion on August 17, 2020, and the certificate of service showed that it was mailed on August 17, 2020, although it was not file-stamped by the clerk until August 24, 2020. The prison-mailbox rule deems a prisoner's pro se PCR motion "timely if it is deposited in the prison mail system within the time required." *Logan v. State*, 300 So. 3d 1040, 1043 (¶7) (Miss. Ct. App. 2020).

assistance of counsel, presenting ten reasons why his counsel was ineffective.

¶13.    The circuit court denied Tallant's PCR motion on September 3, 2020.  The court's order stated that Tallant had previously sought post-conviction relief in September 2018, which challenged post-conviction discovery and challenged the sufficiency of the evidence. Therefore, the court held that his request for relief was barred because it was a "successive petition" for post-conviction relief.  But the court acknowledged Tallant's claims of ineffective assistance of counsel and double jeopardy were exceptions to the procedural bar. The court rejected Tallant's claim that the three counts of sending or transmitting child pornography were actually a single offense for which he was sentenced three times.  The circuit court noted that Tallant's voluntary statement evidenced that he sent multiple images of children in sexual acts; thus, the court found that his claim was without merit.  Further, the circuit court held that Tallant's ineffective-assistance claim was meritless because he merely asserted a constitutional-right violation instead of providing some basis for the truth of his claim and could not overcome procedural bars.  Therefore, the circuit court denied Tallant's PCR motion.

¶14.    On September 23, 2020, Tallant appealed the denial of the PCR motion, raising the following issues: (1) whether the August 2020 motion was a successive PCR motion and procedurally barred; (2) whether the circuit court erred by dismissing his ineffective-assistance-of-counsel claim; and (3) whether the indictment, which he claims included multipliticous, identical counts and allegedly failed to include the essential elements of the

9

crime, violated his Fifth Amendment right to be protected from double jeopardy.[6]

**Standard of Review**

¶15.   "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if . . . [it] is clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Green v. State*, 242 So. 3d 176, 178 (¶5) (Miss. Ct. App. 2017).

**Discussion**

¶16.   Unless a statutory exception is applicable, a motion for [post-conviction] relief must be made, in the case of a guilty plea, within three years after entry of the judgment of conviction.  Miss. Code Ann. § 99-39-5(2) (Rev. 2020).  The exceptions include (1) an intervening decision of either the United States Supreme Court or the Supreme Court of the State of Mississippi; (2) new evidence not reasonably discoverable at trial; or (3) an expired sentence, or an unlawful revocation of parole, probation, or conditional release.  *Id*. § 99-39-5(2)(a)(i), (b).

¶17.   Violations of four types of fundamental rights also survive PCR procedural time-bars: "(1) the right against double jeopardy; (2) the right to be free from an illegal sentence; (3) the right to due process at sentencing; and (4) the right not to be subject to ex post facto laws." *Putnam v. State*, 212 So. 3d 86, 92 (¶16) (Miss. Ct. App. 2016).  Ineffective assistance of counsel can constitute an exception to the UPCCRA's procedural bars in

---

[6] Tallant raised five issues on appeal.  Because the issues overlap, his arguments will be addressed as three issues.

"extraordinary circumstances." *Chapman v. State*, 167 So. 3d 1170, 1173-75 (¶¶10-13) (Miss. 2015).

¶18. "[M]ere assertions of constitutional-rights violations do not suffice to overcome the procedural bar." *Smith v. State*, 251 So. 3d 754, 755 (¶6) (Miss. Ct. App. 2018) (quoting *Williams v. State*, 158 So. 3d 1171, 1173 (¶4) (Miss. Ct. App. 2014)). A movant must provide sufficient evidence to support his claim. *Wheeler v. State*, 306 So. 3d 751, 758 (¶24) (Miss. Ct. App. 2020), *cert. denied*, 306 So. 3d 437 (Miss. 2020).

**I.     Whether the August 2020 motion was a successive PCR motion.**

¶19. Tallant argues that his August 2020 PCR motion was not successive because his trial counsel "incompetent[ly]" filed his first motion as a PCR instead of simply filing a request to review records at the D.A.'s office. Additionally, he states that the first PCR motion did not comply with the requirements set forth by the UPCCRA rules and therefore could not have been considered a PCR motion.

¶20. The UPCCRA provides "an exclusive and uniform procedure for the collateral review of convictions and sentences." Miss. Code Ann. § 99-39-3(1) (Rev. 2020). The UPCCRA also imposes a bar against successive writs. *Gunn v. State*, 248 So. 3d 937, 941 (¶16) (Miss. Ct. App. 2018). Pursuant to Mississippi Code Annotated section 99-39-23(6) (Rev. 2020), "any order dismissing the petitioner's motion or otherwise denying relief under this article is a final judgment and shall be conclusive until reversed. It shall be a bar to a second or successive motion under this article." "Essentially, an appellant is granted one bite at the

11

apple when requesting post-conviction relief." *Salter v. State*, 184 So. 3d 944, 951 (¶24) (Miss. Ct. App. 2015) (quoting *Dobbs v. State*, 18 So. 3d 295, 298 (¶9) (Miss. Ct. App. 2009)). This Court has stated that "[t]he movant bears the burden of proving by a preponderance of the evidence that his claims are not barred as successive writs." *Williams v. State*, 110 So. 3d 840, 843 (¶13) (Miss. Ct. App. 2013) (citing *Robinson v. State*, 19 So. 3d 140, 144 (¶16) (Miss. Ct. App. 2009)).

¶21. The Mississippi Supreme Court has held that a post-conviction request for documents can be considered by the trial court if it is filed in a proper PCR motion. *Fleming v. State*, 553 So. 2d 505, 506 (Miss. 1989). The supreme court went further in *Jackson v. State*, 225 So. 3d 1207, 1208 (¶7) (Miss. 2017), to hold that a trial court lacks jurisdiction to consider a PCR motion for documents and transcripts when it is not a part of a properly filed PCR motion. The supreme court held that "the trial court should have dismissed Jackson's motion for records and transcripts for want of jurisdiction rather than denying it on the merits." *Id*. at 1208 (¶6).

¶22. In this case, Tallant's first post-conviction pleading only requested to review the sealed records at the D.A.'s office. Although the prayer for relief included the language "or in the alternative, judgment in this cause be set aside," the body of the motion cited no reasons why the judgment should be set aside, nor did it include any authority for vacating his sentence. It failed to assert any grounds for relief pursuant to Mississippi Code Annotated section 99-39-5, such as a claim that the conviction or sentence violated the

12

United States or Mississippi Constitutions or that the trial court was without jurisdiction to impose sentence. Even the circuit court found that Tallant's pleading did not comply with statutory requirements. We too find that Tallant failed to substantially comply with the content requirements of section 99-39-5.[7]

¶23. Under *Jackson* and *Fleming*, Tallant's first pleading was not a properly filed PCR motion. He merely requested records. Pursuant to *Jackson*, the circuit court should have dismissed Tallant's motion for want of jurisdiction rather than denying it on the merits. Accordingly, Tallant's second motion dated August 24, 2020, is not a successive writ.[8]

> **II. Whether the circuit court erred by dismissing his claim of ineffective assistance of counsel.**

¶24. Because Tallant's first motion was not a properly filed PCR motion, we now address the merits of Tallant's appeal of the denial of his 2020 PCR motion, including the claim of ineffective assistance of counsel. "To prevail on a claim of ineffective assistance, [Tallant] must demonstrate: (1) [that] his trial attorney's performance was deficient," and (2) that this deficiency was prejudicial to his defense. *White v. State*, 59 So. 3d 633, 636 (¶12) (Miss. Ct. App. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)) (other citation

---

[7] Tallant's pleading contained no concise statements of the claims or grounds upon which the motion is based, had no separate statement of the specific facts which are within the personal knowledge of the petitioner, was not sworn to by Tallant, and did not have any specific statement of the facts which are not within the petitioner's personal knowledge.

[8] Tallant also claims that he was not provided notice of the circuit court's denial of the first PCR motion so he could file an appeal. But we do not need to address this given our ruling.

13

omitted). In addition, Tallant must show that "there is [a] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hills v. State*, 101 So. 3d 691, 693 (¶9) (Miss. Ct. App. 2012) (quoting *Hannah v. State*, 943 So. 2d 20, 24 (¶6) (Miss. 2006)). An ineffective-assistance-of-counsel claim "must be sufficiently supported to overcome the bar." *Wicker v. State*, 16 So. 3d 706, 708 (¶5) (Miss. Ct. App. 2009). "There must at least appear to be some basis for the truth of the claim before the limitation period will be waived." *Id*. "A defendant's claims of ineffective assistance of counsel must be pled with specificity, and the claim must be supported by affidavits other than his own." *Moore v. State*, 248 So. 3d 845, 851 (¶15) (Miss. Ct. App. 2017) (quoting *Shavers v. State*, 215 So. 3d 502, 507 (¶14) (Miss. Ct. App. 2016)).

¶25.     Tallant argues nine reasons why his trial counsel was ineffective: (1) that his trial counsel did not bring him to view evidence under seal in the district attorney's office; (2) that his trial counsel failed to obtain records in the FBI's possession; (3) that his trial counsel did not invoke spousal privilege at the bond hearing; (4) that his trial counsel improperly informed him of his potential sentence; (5) that his trial counsel tried to indict his wife during divorce court proceedings; (6) that his trial counsel "failed to gather required information" for the motion for special venire and the motion for change of venue; (7) that his trial counsel told him that he did not have to be present at a pretrial motion hearing; (8) that his trial counsel misinformed him on the meaning of a day-for-day sentence; and (9) that his trial counsel convinced him to plead guilty.

### A. Evidence in the District Attorney's Office

¶26. Tallant asserts that his trial counsel was ineffective because Tallant did not accompany his counsel to review the evidence at the district attorney's office. Additionally, Tallant questions whether his trial counsel properly reviewed or inspected the files at the D.A.'s office.

¶27. Rule 17.2 of the Mississippi Rules of Criminal Procedure only requires that the State disclose evidence to the defendant *or* his counsel. Tallant's presence was not required. At the July bond hearing, the circuit court asked Tallant's counsel if he had reviewed the evidence, and Tallant's counsel answered in the affirmative. As an officer of the court, Tallant's counsel was required to be candid with the court. Tallant presented no evidence that his counsel had not responded honestly when questioned by the court. Moreover, pursuant to the court's August order on Tallant's motion to compel, Tallant could have inspected the evidence. But Tallant waived his right to do so by pleading guilty that same day. Finally, at his plea hearing, Tallant did not raise his alleged inability to view the evidence to the court but instead stated that he was satisfied with his attorney's performance. Thus, we find that this claim is without merit.

### B. FBI Records

¶28. Tallant next argues that his trial counsel failed to inquire, investigate, or subpoena any records pertaining to his charges that the FBI may have had that could have contained additional exculpatory evidence. But Tallant presented no evidence that the FBI ever

15

possessed any records on him that his counsel failed to find. This is an example of a mere assertion that is insufficient to form a basis of a PCR motion. *Wilson v. State*, 294 So. 3d 101, 104 (¶8) (Miss. Ct. App. 2020). Therefore, we find that there is no merit to this claim.

### C. Spousal Privilege at the Bond Hearing

¶29. Tallant argues that his trial counsel failed to invoke spousal privilege to prevent his wife's voluntary statement from being presented at his bond hearing. But Tallant's counsel did indeed object to the wife's statement on the ground of spousal privilege:

> TALLANT'S
> COUNSEL:    Your Honor, we object under the spousal
> privilege and will be filing a motion to that effect.
> I object to having this in the record.

The circuit court overruled the objection and allowed the State to admit the statement for identification purposes. The court noted that Tallant's counsel could pursue a motion to suppress the statement if a trial occurred. Clearly, Tallant's trial counsel objected to the statement on the grounds of spousal privilege. Thus, we find that this claim is without merit.

### D. Divorce Court Proceedings

¶30. Tallant alleges that his trial counsel tried to get Tallant's wife charged and indicted through the chancery court's divorce proceedings. Tallant and his wife were going through a divorce at the same time as the criminal case was proceeding against Tallant. In the divorce proceeding, the guardian ad litem (GAL) sought access to the evidence at the D.A.'s office in order to make a recommendation to the chancery court concerning the best interest of the child. Tallant's counsel filed a motion for a status conference in the criminal case to

16

determine how the sealed evidence should be handled in light of the GAL's request. However, the record does not show that Tallant's counsel ever attempted to have Tallant's wife charged with a crime, nor did Tallant present any evidence that his attorney had an ulterior motive in filing the motion for a status conference. Thus, we find that this argument is without merit.

### E. Motion to Change Venue and Motion for Special Venire

¶31. Tallant next asserts that his trial counsel failed to "gather required information" for the motion to change venue and motion for special venire. However, Tallant fails to identify what information that his counsel should have retrieved. The record reflects that Tallant's trial counsel properly filed both motions and attached exhibits of various Facebook posts and newspaper articles in support of the motions. Tallant makes no argument that his counsel's failure to gather facts for both motions influenced his decision to plead guilty. Moreover, Tallant does not claim that had his counsel pursued those motions, he would have elected to go to trial, which would have resulted in a different outcome. The Mississippi Supreme Court has stated that a defendant "must show that there is a reasonable probability that, but for counsel's errors, [he] would not have [pled] guilty, would have insisted on going to trial, and the outcome would have been different." *Hannah*, 943 So. 2d at 24 (¶7). Therefore, this argument is meritless.

### F. Presence at Pretrial Motion Hearing

¶32. Tallant argues that his trial counsel improperly informed him that he did not have to

17

be present at the pretrial motion hearing when his presence was mandatory. Tallant also mentions that his trial counsel's misinformation prevented him from having the support of his family and friends at the hearing. His argument is patently without merit. According to the record, Tallant was not only present at the pretrial motion hearing but also testified during the hearing. Thus, this assertion is without merit.

### G. *Day-for-Day Sentence and Guilty Plea*

¶33. Tallant asserts that he was convinced to plead guilty because his trial counsel improperly informed him about the meaning of a day-for-day sentence. He specifically states that his trial counsel inaccurately told him that he would receive a day-for-day sentence, but he would be able to reduce his time served by 50% for good behavior.

¶34. "Where a defendant enters a plea on advice of counsel, the attorney's performance is deemed 'deficient' for purposes of the *Strickland* standard only if it falls below 'the range of competence demanded of attorneys in criminal cases.'" *Garrett v. State*, 110 So. 3d 790, 793 (¶13) (Miss. Ct. App. 2012) (footnote omitted) (quoting *Baldwin v. State*, 923 So. 2d. 218, 222 (¶12) (Miss. Ct. App. 2005)). "A voluntary guilty plea 'emanates from the defendant's informed consent.'" *Sylvester v. State,* 113 So. 3d 618, 622 (¶12) (Miss. Ct. App. 2013) (quoting *Myers v. State*, 583 So. 2d 174, 177 (Miss.1991)). "An allegation that the defendant pled guilty in response to counsel's mistaken advice may vitiate the plea, because it indicates the defendant may not have been fully aware of the consequences of the plea." *Id.*

> This Court has held that a defendant has provided sufficient evidence showing that he was entitled to an evidentiary hearing on whether his plea was knowingly, intelligently, and voluntarily in cases where: the defendant alleged that he was given erroneous advice by his attorney as to his parole eligibility, the alleged misinformation went uncorrected (such as the failure to address the issue of parole during the plea hearing), and the defendant provided evidence other than his own sworn statement (such as a sworn affidavit from a third party) in support of his allegation.

*Kennedy v. State*, 287 So. 3d 258, 266 (¶25) (Miss. Ct. App. 2019), *cert. denied*, 279 So. 3d 1087 (Miss. 2019). Although misinformation could be the basis of an ineffective-assistance-of-counsel claim, "there must at least appear to be some basis for the truth of the claim of a fundamental-constitutional-rights violation." *Moore v. State*, 248 So. 3d 845, 853 (¶21) (Miss. Ct. App. 2017) (quoting *Ducksworth v. State*, 134 So. 3d 792, 795 (¶5) (Miss. Ct. App. 2013)).

¶35. In this case, Tallant's assertion that his attorney misinformed him about his sentence is not supported. Tallant filed only a letter from his father, which is not competent evidence because his father had no personal knowledge of what Tallant's counsel advised him at the time that Tallant pled guilty. In the letter, Tallant's father stated:

> [A]t trial [*Tallant's counsel*] said that I would not be needed and that it was only a matter the Judge and Defense and the prosecutor would attend.
>
> Afterwards I [(Tallant's father)] learned an additional amount of time was added upon the agreed time making the sentence a day for day sentence and I don't think he [(Tallant's trial counsel)] explained that part to you. Your lawyer did not object to the added time that was given you, this tells me that he knew beforehand what was going to happen and he went along with it.
>
> My discussion with him about that didn't go well, so he said that he would have to wait until after the Judge retired and file a petition to change the last

19

part of the sentence back to the original amount of time that you were told.

The letter does not indicate that his father was present during conversations between Tallant and his trial counsel especially on the day of the plea hearing. Additionally, his father's use of the word "afterwards" indicates that Tallant's father was not present at the time of the plea hearing. Accordingly, the circuit court was left solely with Tallant's mere assertion that his attorney misinformed him.

¶36. Additionally, the circuit court clarified at the plea hearing that Tallant would be serving his full sentence day-for-day. At the time that Tallant pled guilty, the circuit court questioned Tallant under oath, regarding the consequences of his plea, which included whether he understood the charges and sentencing, and whether his trial counsel had advised him of his Constitutional rights and the consequences of pleading guilty. Tallant answered in the affirmative. Specifically, the State's counsel also explained the sentencing recommendation including the provision for serving time day-for-day. The circuit court also explained that Tallant would serve his sentence day-for-day:

> Mr. Tallant, in Count I in Cause CR17-388 in the Circuit Court of Lee County, Mississippi, the sentence of this Court is that you serve 40 years in the custody of the Mississippi Department of Corrections. Fifteen years, one month of that 40 years will be suspended on condition that you violate no law of the United States, the State of Mississippi, or any other state, and that you violate no term or condition of the post-release supervision imposed in this cause here today. You'll be on post-release supervision for a period of five years. This is *a day-to-day sentence. You'll be required to serve each and every day.*

(Emphasis added). The circuit court itself specifically made an inquiry when the judge asked Tallant if he understood the recommendation and that the court was not bound to the

recommendation, to which Tallant answered both questions affirmatively. Moreover, Tallant had several opportunities to state that he was misinformed by counsel and that he did not agree to the day-for-day sentence.[9]

¶37.    Ultimately, Tallant's arguments of ineffective assistance of counsel are all meritless. He fails to establish that his trial counsel's performance was deficient and therefore prejudiced his defense. *White*, 59 So. 3d at 636 (¶12). Tallant knowingly, intelligently, and voluntarily pled guilty and failed to prove that but for his trial counsel's deficiency the result of the proceeding would have been different as required in *Hills*, 101 So. 3d at 693 (¶9).

**III.    Whether Tallant was deprived of his Fifth Amendment right against Double Jeopardy.**

¶38.    Tallant claims that the circuit court erred by finding his double jeopardy claim to be without merit. He argues that he was deprived of his rights against double jeopardy due to alleged multiplicitous and identically worded counts of transmission of child pornography in his indictment. Specifically, Tallant argues that he received multiple punishments for the same (single) offense. In addition, Tallant argues for the first time on appeal that his indictment did not identify the essential elements of the crime. After a thorough review, we find that Tallant's arguments lack merit.

### A.    *Multiplicitous Indictment*

---

[9] The circuit court judge stated that day-for-day sentence means "serv[ing] each and every day." Although this occurred after Tallant pled guilty on the three counts of pornography, Tallant raised no question or objection and did not withdraw his guilty plea.

¶39. "The Double Jeopardy Clause 'prevents a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense.'" *Williams v. State*, 167 So. 3d 252, 257 (¶15) (Miss. Ct. App. 2015) (quoting *Thomas v. State*, 930 So. 2d 1264, 1265-66 (¶5) (Miss. Ct. App. 2005)); *see also Dancy v. State*, 287 So. 3d 931, 940 (¶35) (Miss. 2020) (Double jeopardy "protects against multiple punishments for the same offense."). Tallant claims that his multiple texts and multiple pornographic images constituted one offense and that his indictment improperly charged him with separate counts, resulting in separate punishments. We disagree.

¶40. Mississippi Code Annotated section 97-5-33 prohibits the transmission of child pornography, providing:

> No person shall, by any means including computer, knowingly send, transport, transmit, ship, mail or receive any photograph, drawing, sketch, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct.

By using the word "any" in describing the types of items one can potentially distribute, this statute criminalizes the transmission of even a single photograph, drawing, sketch, film, video tape or other visual depiction. Thus, transmitting a single photograph or a single message constitutes a single offense under section 97-5-33. In this case, the indictment charged Tallant with the three separate transmissions of sending multiple images of child pornography over a period of time. Because each transmission was a separate offense for which Tallant was separately indicted and to which he separately pleaded guilty, the

22

indictment was not improper.[10]

_____

[10] Our ruling today is not affected by the Mississippi Supreme Court's recent holding in *McGlasten v. State*, No. 2020-KA-00279-SCT, 2021 WL 5118111 (Miss. Nov. 4, 2021). In *McGlasten*, the police found four firearms at McGlasten's residence in a search they conducted on the same day as McGlasten's arrest. *Id*. at *2 (¶8). He was then charged and convicted of four counts of the possession of firearms under Mississippi Code Annotated section 97-37-5, which states that "[i]t shall be unlawful for any person who has been convicted of a felony . . . to *possess any* firearm" unless pardoned or rehabilitated. (Emphasis added). On appeal, the Mississippi Supreme Court held that "the 'simultaneous possession' of multiple firearms generally 'constitutes only . . . one offense'" under section 97-37-5(1) "unless there is evidence that the weapons were stored in different places or acquired at different times." *Id*. at *6 (¶27) (quoting *United States v. Jones*, 841 F.2d 1022, 1023 (10th Cir. 1988)). The supreme court found that the State failed to prove that "all or some of the four weapons [that] McGlasten simultaneously possessed were stored in different places or acquired at different times." *Id*. at (¶28). Thus, in McGlasten's case, the evidence only supported one violation of section 97-37-5(1), and the supreme court remanded the case to the circuit court to vacate McGlasten's sentences and merge the four counts of conviction into one count. *Id*. at *7 (¶30).

Tallant's case is distinguishable from *McGlasten* in several ways. The criminal act defined by the statute in *McGlasten* was the single *possession* of firearms. Clearly more than one "possession" (e.g., weapons acquired at different times or stored in different locations) would support separate indictments. But the criminal act in the statute in Tallant's case is the *transmission*, not possession, of images of child pornography. Tallant's indictment charged him with three separate counts of transmitting child pornography, each of which read:

> [I]n said County and State between October 1, 2016 and October 31, 2016, did willfully, unlawfully, feloniously and knowingly send or transmit a photograph of an actual child under the age of eighteen years engaging in sexually explicit conduct as defined by Mississippi.

The indictment covered an extended time period with a range of dates, October 1, 2016, to October 31, 2016, indicating that Tallant sent images of child pornography at different times, and not just once. Each count reflected the separate transmission of a separate child's image, which constituted a separate crime. Thus, the *McGlasten* holding is inapplicable to Tallant's case.

¶41. The record supports charging Tallant in separate counts in his indictment. Investigators found multiple texts and images of child pornography in Tallant's message logs. In her voluntary statement, Tallant's wife stated that Tallant would send her multiple images of child pornography. Furthermore, Tallant admitted several times that he knowingly transmitted child pornography in several texts. Tallant admitted that he possessed and transmitted multiple images of child pornography in his voluntary statement:

> I would send Lyn [(Tallant's wife)] text *messages* while I was on the boat. . . . I sent my wife multiple images of children in sexual acts to her telephone. I would text the images to her. I sent her 10-20 images. I knew these images were child pornography because it was obvious.

Investigators testified that they found these *texts*, which resulted in multiple counts in Tallant's indictment for each text.

¶42. Most significantly, Tallant pled guilty to each charge of transmitting child pornography without challenging the alleged multiplicitous indictment that he now alleges in his PCR motion. In *Knight v. State*, 192 So. 3d 360, 365 (¶14) (Miss. Ct. App. 2016), this Court held that because Knight who was charged with possession of firearms at different times pled guilty to two separate offenses of the possession of a firearm, he essentially waived the right to later raise a multiplicitous indictment/double jeopardy claim. Tallant, like Knight, pled guilty at his plea hearing to separate offenses, each of which was read to him and to each of which he agreed he was guilty. In his PCR motion he claims he was entitled to the names of the children, further indicating he knew he was guilty of multiple charges of transmission of child pornography. Therefore, when Tallant pled guilty to the three separate

24

child pornography charges, he waived his right to claim a multiplicitous indictment/double jeopardy claim.

¶43. Tallant further argues that his right against double jeopardy was violated because each count in his indictment was identically worded, citing *Goforth v. State*, 70 So. 3d 174 (Miss. 2011), as support. But *Goforth* is factually and procedurally distinguishable from Tallant's case. In *Goforth*, the defendant was indicted and charged with five separate counts of sexual battery. *Id*. at 179 (¶18). However, each sexual battery count was "identically worded" in the indictment. *Id*. at 188. (¶70). The case went to trial, and the jury acquitted Goforth of three counts but convicted her of two. *Id*. at 176 (¶1). Goforth appealed to the Mississippi Supreme Court, raising the issues of a Confrontation Clause violation and double jeopardy. *Id*. at 188 (¶61). The supreme court found that the Confrontation Clause violation constituted reversible error. *Id*. at 187 (¶55). Further, because the indictment did not differentiate between the sexual battery counts, "neither [Goforth] nor anyone else would be able to determine on which specific charges she previously was acquitted or convicted." *Id*. at 190 (¶70). Therefore, the Court found that any attempt to retry her constituted double jeopardy. *Id*.

¶44. In Tallant's case, we find no reversible error that would put Tallant in Goforth's legal posture. Although Counts I-III were identically worded, we have held that they are not multiplicitous because Tallant was charged with distinct and separate offenses. Even if we found reversible error on the ineffective assistance of counsel claim, then this Court would

25

be required to set aside Tallant's guilty pleas and remand the case for further proceedings. Tallant would then be facing all his charges, not just some as in *Goforth*. In addition, because Tallant pled guilty, and because we find no other reversible error to possibly remand as did the supreme court in *Goforth*, there is no chance of Tallant being prosecuted again for the same charges. Consequently, he faces no exposure to double jeopardy. Thus, this issue is without merit.

### B. Indictment's Failure to Include the Essential Elements of the Crime

¶45. Tallant also argues that the indictment did not contain the essential elements of the crime. However, he failed to present this issue to the circuit court. Therefore, his claim is barred on appeal. "A prisoner's failure to raise an issue in the circuit court operates as a waiver and renders that issue procedurally barred on appeal." *Bass v. State*, 174 So. 3d 883, 885 (¶6) (Miss. Ct. App. 2015) (citing Miss. Code Ann. § 99-39-21(1) (Rev. 2007)). Notwithstanding the procedural bar, this issue is without merit.

¶46. The Mississippi Supreme Court has held that "an indictment is generally sufficient if it tracks the language of the relevant criminal statute." *Jones v. State*, 215 So. 3d 508, 512 (¶13) (Miss. Ct. App. 2017) (citing *Tran v. State*, 962 So. 2d 1237, 1241 (¶17) (Miss. 2007)). "[A]n indictment must contain (1) the essential elements of the crime charged, (2) sufficient facts to fairly inform the defendant of the charge which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Warren v. State*, 187 So. 3d 616, 621 (¶10) (Miss. 2016) (quoting *Young v. State*,

26

119 So. 3d 309, 313 (¶11) (Miss. 2013)). "The indictment upon which the defendant is to be tried shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him." *Tapper v. State*, 47 So. 3d 95, 101 (¶22) (Miss. 2010).

¶47. Tallant specifically claims that the indictment failed to be specific about a number of things, including not naming the victim in the picture, not mentioning who received the pictures, and not stating how the pictures were sent. However, the indictment was specific, including the dates of the transmission, stating that Tallant sent or transmitted a photograph of a minor, and naming the statute that Tallant violated. The alleged elements that Tallant stated are lacking from his indictment are not elements required by Mississippi Code Annotated section 97-5-33. In *Cotten v. State*, 202 So. 3d 216 (Miss. Ct. App. 2016), this Court stated that a specific description of a child is not an essential element under section 97-5-33. *Id*. at 219 (¶11). Therefore, his argument is without merit.

## Conclusion

¶48. We find that Tallant's first post-conviction pleading was not a properly filed PCR motion. Accordingly, we find that Tallant's August 2020 post-conviction pleading was not a successive PCR motion. However, we affirm the circuit court's denial of the August 2020 pleading because Tallant failed to prove his claims of ineffective assistance of counsel and double jeopardy.

¶49. **AFFIRMED.**

   **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE,**

**WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**